Monmouth County Circuit Court.

IN THE MATTER OF THE CONTEST OF THE ALLEGED NOMINATION OF ROLAND J. HINES TO THE OFFICE OF COUNCILMAN OF THE CITY OF ASBURY PARK, IN THE COUNTY OF MONMOUTH AND STATE OF NEW JERSEY.

Decided April 18, 1945.

For the petitioners, *Ward Kremer.*

For the respondent, *Haydn Proctor, John M. Pillsbury* and *Nelson Ehrlich.*

For the City of Asbury Park and the city clerk, *Charles Frankel.*

Kinkead, C. C. J. The respondent, Roland J. Hines, on February 17th, 1945, filed a petition of nomination with the city clerk of Asbury Park as a candidate for the office of councilman at the municipal election which will be held in Asbury Park on May 8th, 1945.

The petitioners, on March 16th, 1945, filed a petition contesting the right of respondent to be nominated on the ground that he was not a resident of Asbury Park at the time of his nomination and that he has actually resided in the Borough of Interlaken, New Jersey, since December, 1943, and is thereby disqualified by the provisions of *R. S.* 40:81–1; *N. J. S. A.* 40:81–1, from holding public office in Asbury Park.

The respondent moves to strike the petitioners' petition and contends, *inter alia,* that the right afforded by *R. S.*

19:29–1, et seq.; N. J. S. A. 19:29–1, et seq., to contest the nomination of a candidate for public office is applicable only to a candidate who is nominated at a primary election, as distinguished from one (as in the instant case) who is nominated by the filing of a petition of nomination.

The legislative intent is to be gleaned from all the provisions of an enactment, taken and compared together. *Ursi v. County Employees, &c., Essex,* 120 *N. J. L.* 52; 197 *Atl. Rep.* 744.

*R. S.* 19:29–1; *N. J. S. A.* 19:29–1, provides that the nomination of any person to any public office may be contested, and specifies the different grounds on which a contest may be based. The ground on which the nomination of the respondent is contested is set forth in subdivision (i), which provides that a contest may be initiated "when a petition for nomination is not filed in good faith or the affidavit annexed thereto is false or defective."

*R. S.* 19:29–2; *N. J. S. A.* 19:29–2, provides substantially that the contest shall be commenced by the filing of a petition, signed by at least fifteen voters, with the clerk of the Circuit Court in the county where the contest is to take place.

*R. S.* 19:29–3; *N. J. S. A.* 19:29–3, is as follows: "The petition contesting *any nomination* to public office * * * shall be filed not later than ten days after the *primary election.* * * *." (Italics supplied.)

Neither in *R. S.* 19:29–3; *N. J. S. A.* 19:29–3, nor in any other section of the enactment is any provision made for the contest of a nomination by petition as distinguished from a nomination by primary election.

Furthermore, it is appropriate to note at this point that when *R. S.* 40:84–5; *N. J. S. A.* 40:84–5, was originally enacted, it provided that a candidate for public office whose nomination was effectuated by the filing of a petition of nomination had to file his petition of nomination at least fifteen days prior to the election. (This statute was amended by the 1945 legislature, *N. J. S. A.* 40:84–5, in order to allow ample time for the mailing of ballots to our armed forces, and petitions of nomination must now be filed at least seventy-five days prior to the election.)

The time limit for filing as originally enacted has a bearing on the legislative intent when the statute which fixes the time for the hearing of a contest is considered. *R. S.* 19:29–4; *N. J. S. A.* 19:29–4, provides: "The court shall appoint a suitable time for hearing such complaint, not more than thirty nor less than fifteen days after the filing of the petition. * * *."

It follows that during the many years that the fifteen-day filing limit was in effect, it would have been impossible for the court to hear and decide before the election actually took place the contest of the nomination of a candidate who filed his petition of nomination on the last day that filing was legally permissible.

It is therefore reasonable to assume that if the legislature had intended that *R. S.* 19:29–1, *et seq.; N. J. S. A.* 19:29–1, *et seq.*, should afford the right to contest a *nomination by petition* as distinguished from a *nomination by primary election,* it would have stated such intent in clear and unmistakable terms. Failing that, the legislature would most certainly have designated such a time limit for filing a nomination by petition as would have enabled the court to have sufficient time to hear and decide the contest in an orderly manner before the advent of the ensuing election.

Mr. Justice Heher, speaking for the Supreme Court, in *Singer Sewing, &c., Co.* v. *The New Jersey Unemployment, &c.,* 128 *N. J. L.* 611 (held at *p.* 616); 27 *Atl. Rep.* (2d) 889, 893: "The intent of the law-making body is to be found in its language; and while the letter of the enactment is not always controlling, the meaning thus expressed is not to be enlarged or modified unless the context reveals strong justification therefor. Where the legislative design is stated in clear, certain and unambiguous language, there is no room for construction. A judicial modification of the purpose thus signified would constitute the exercise of the legislative function. Departure from the literal import of the terms employed to declare the legislative object is warranted only to effectuate the intention evident from a view of the whole law and other laws *in pari materia.*"

A comparison of all of the provisions of *R. S.* 19:29–1,

*et seq.; N. J. S. A.* 19:29–1, *et seq.,* and *R. S.* 40:84–5; *N. J. S. A.* 40:84–5 (as originally enacted) leads to the inescapable conclusion that the legislative intent was to limit the contest of any nomination to those candidates who are required to be nominated at a primary election.

Respondent's motion to dismiss the petitioners' petition is therefore granted, and an appropriate order may be submitted.